In re HITCHCOCK.

(District Court, N. D. Georgia. July 24, 1922.)

No. 1118.

Mortgages ⬡⟲309(3)—Voluntary cancellation held effective.

Under Civ. Code Ga. 1910, § 3309, providing that, where property is conveyed to secure a debt, surrender and cancellation of the deed in the same manner as mortgages are canceled on payment of the debt shall operate to reconvey title to the property, the cancellation of a security deed and its delivery to the grantor, who had it canceled of record, *held* binding and effective, though the cancellation was voluntary and without consideration.

In Bankruptcy. In the matter of R. R. Hitchcock, bankrupt. On review of order of referee. Affirmed.

⬡⟲For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Charters, Wheeler & Lilly, of Gainesville, Ga., for petitioner.
C. N. Davie, of Gainesville, Ga., Erwin, Erwin & Nix, and Green & Michael, all of Athens, Ga., for trustee.

SIBLEY, District Judge. A summary proceeding was brought against S. B. Carter to require him to deliver to the trustee $2,100 in cash paid him by the bankrupt after the filing of the petition for adjudication. By stipulation of the parties it was agreed that, if a security deed formerly held by S. B. Carter against the lands of the bankrupt is still a valid incumbrance, he should retain the money; otherwise, that he should pay it over.

The security deed was given by the bankrupt more than four months prior to the filing of this petition, to secure antecedent indebtedness. Within four months after it was given, on dissatisfaction of some of the maker's creditors, Carter, without any payment to him or other consideration than the desire to prevent a threatened bankruptcy, executed a cancellation of the security deed upon it and redelivered it to the bankrupt, who had the same canceled from the record. The contention is that as the security deed was not paid, and as no valuable consideration was even given for the cancellation, it is ineffective, and the security deed still of force.

Section 3309 of the Code of 1910, taken from Acts 1889, p. 119, provides that, where property is conveyed to secure a debt, the surrender and cancellation of such deed in the same manner that mortgages are now canceled, on payment of such debt to any person lawfully authorized to receive the same, shall operate to reconvey the title of said property. Section 3270 provides that any mortgagor in this state, who may have paid off his mortgage, may present the same, together with the order of the mortgagee or transferee directing that the mortgage be canceled, and record the order across the face of the record, to the clerk of the superior court of the county in which the same is recorded, and such clerk shall write across the face of such record the word "Satisfied" and the date of such entry, and sign his name thereto officially.

Prior to the act of 1889, where title was conveyed to secure a debt, payment of the debt would reinvest a perfect equity in the grantor, but for him to be vested with legal title a reconveyance of the title by deed was essential. A promise to make such a reconveyance, without consideration, of course, would have been nudum pactum and unenforceable, but a reconveyance actually made, without accident, fraud, or mistake, would unquestionably have reconveyed the title, irrespective of whether the debt had been paid or a consideration given for the reconveyance. It would operate like any other deed of gift. The express effect of the act of 1889 was to make a cancellation of the deed as provided for mortgages "operate to reconvey the title of said property to the grantor." Here again a promise to cancel would, of course, be unenforceable, unless based on a sufficient consideration. But an accomplished cancellation, duly recorded, as provided for mortgages, would be an executed instrument effective in law, although it may have been done without consideration.

The references to payment of the debt in sections 3309 and 3270 were not intended to condition the legal operation of the cancellation, but rather to indicate the occasion on which it might be demanded and recorded by the mortgagor. Third persons dealing with the property are not required to ascertain the validity of the cancellation, so far as consideration therefor is concerned. The purpose of the law, as the purpose of the person executing the cancellation, must be considered to advertise reliably to third persons the fact that the mortgagee or holder of the security deed no longer claims any rights thereunder. This, of course, does not preclude a proceeding to cancel a cancellation, if sufficient ground exists therefor, either as against the mortgagor or maker of the deed or third persons. But that the cancellation, until set aside, is regarded as final, independently of the consideration, appears from the case of Woodside v. Lippold, 113 Ga. 877, 39 S. E. 400, 84 Am. St. Rep. 267, where a mortgage was canceled without any consideration, yet subrogation or other equitable relief was refused on the sole ground that, though done under a mistake, it had been negligently done. So in Farkas v. Third National Bank of Albany, 133 Ga. 755, 66 S. E. 926, 26 L. R. A. (N. S.) 496, a cancellation was upheld, although the debt had not been paid, but merely other security given. This, of course, was a consideration for the cancellation, but refutes the idea that the debt must have been paid.

Esteeming the cancellation, voluntarily and purposefully done, without any fraud, accident, or mistake, to be valid and binding, I find it unnecessary to inquire into other questions argued.

The referee's judgment is affirmed.